PITMAN PUBLISHING CORP. *v.* UNITED STATES (No. 4393)[1]

---

[1] C. A. D. 222.

United States Court of Customs and Patent Appeals, December 1, 1942

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

Oral argument October 8, 1942, by Mr. J. L. Klingaman and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant imported certain articles, at the port of New York, which were described in the entries as "Blankbooks," and which are used, in the main, by court reporters for taking shorthand notes in reporting court proceedings and the like. They were assessed for duty at 25 per centum ad valorem under paragraph 1410 of the Tariff Act of 1930, as "blank books," the pertinent portion of which paragraph is as follows:

PAR. 1410. * * * blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem; * * *.

The importer duly filed a protest, claiming that the merchandise should have been assessed at 20 per centum ad valorem under the same provision of paragraph 1410 as modified by the trade agreement with the United Kingdom, T. D. 49753, the applicable part of which reads:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
| --- | --- | --- |
| 1410 | Blank books, slate books, engravings, maps, and charts, not specially provided for (except diaries, notebooks, and address books) | 20% ad val. |

On March 20, 1942, the United States Customs Court handed down its judgment overruling the protest, and from that judgment the importer brings this appeal.

The instant merchandise is listed in appellant's price catalog as "Fono Notebooks," the word "Fono" undoubtedly being a contraction of the word "phonography." Copies of the books were introduced in evidence, and they bear the words "Reporting Note-Book." Collective Exhibit 2, which is representative of the imported mer-

chandise, is ruled in a certain manner so as to aid the reporter in determining who is speaking. The reporter begins his shorthand notes, representing the language of the questioner, at one vertical line, and the notes of the answer at another parallel vertical line situated to the right of the first line. In this manner, the reporter is enabled to make and transcribe his notes with greater facility

Appellant contends, in substance, that the framers of the above-quoted trade agreement provision used the term "notebooks" in a very narrow sense; that unless a narrow construction is given to the term, all blank books must be regarded as notebooks. Appellant produced at the trial certain address books and small books with attached pencils, upon which is found the word "Notes," and which are used by their carriers for jotting down memoranda.

Appellant seeks to confine the meaning of the term "notebooks" to such books as one would use to note down intended purchases of groceries, flowers, gifts, etc., or for the purpose of noting anniversaries, birthdays, or other personal matters. It is further contended by appellant that the rule of *noscitur a sociis* is applicable in giving construction to the language "except diaries, notebooks, and address books." It is urged that since "notebooks" has a number of meanings, it is proper to consider the character of the articles with which the term is associated. Appellant then adds that the notebooks the negotiators of the trade agreement "were thinking about are such as are used for purely personal matters and not the highly specialized book now before the court."

With appellant's argument that if the term "notebook" is not given the narrow meaning which it contends for and if the general definition of notebook is relied upon, the term "notebook" will have as broad a meaning as the term "blank book," we cannot agree. It seems too clear to admit of extended discussion that there are numerous blank books which cannot be regarded as "notebooks," "diaries," or "address books."

On the question of *noscitur a sociis*, appellant has cited *United States* v. *R. F. Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645. While the term "notebook" is generally defined as a book in which to record notes, it has a variety of meanings. For instance, there are promissory notebooks, reporters' notebooks, notebooks carried on the person for personal use, and notebooks of a character similar to the latter but not carried on the person. When we apply the doctrine of *noscitur a sociis* and attempt to associate promissory notebooks with diaries and address books, it seems clear that we are considering articles which have little in common, either in structure or use. However, when we apply the doctrine to the three terms involved here and consider the merchandise at bar, there is no incongruity in associating stenographic notebooks, in which notes are

made, with diaries and address books. We know as a matter of common knowledge that notebooks used for the purpose of jotting down personal memoranda are not necessarily small or carried on the person. Neither are address books. Therefore, appellant would not be justified in urging that under the rule of *noscitur a sociis* the size of the articles at bar is a matter of importance.

With respect to the *Downing* case, *supra*, in which imported tweezers were involved, it suffices to say that in holding the doctrine of *noscitur a sociis* not to apply to the language of the paragraph there under consideration we pointed out that there were no competing provisions except the paragraph devoted to articles of metal of several kinds, not specially provided for. That the facts in the instant case are materially different from those in the *Downing* case is too obvious to require further comment.

The Government urges, and the trial court held, that shorthand characters made by reporters and stenographers are uniformly known as notes. One of appellant's witnesses admitted that the product of the stenographer-reporter consists of notes.

The Standard Dictionary defines "Notebook" as—

A book in which to enter notes.

Webster's New International Dictionary, second edition, defines "Notebook" as—

A book in which notes or memoranda are recorded.

The term "except diaries, notebooks, and address books" excepts from the "blank books" provision those three named articles, and we think that the language used should not be given such a narrow construction as to defeat the purpose intended. No reason has been assigned why the framers of the trade agreement would want to except from the higher duty provision, only those notebooks of the character urged by appellant, nor, for that matter, have we found the expression of any opinion anywhere as to why the framers exempted from the lower rate of duty the three articles mentioned in the controverted phrase. Since the merchandise at bar is notebooks, and since there is nothing about its character that would suggest a different tariff treatment from diaries and address books, we think that it should take the same rate of duty.

The trial court, in an opinion by Kincheloe, Judge, in part had the following to say:

We think it is quite evident from the above definitions that the term "blank book" is broader than the term "notebook", which latter is simply a particular kind of blank book, and the said provision of said Trade Agreement we think clearly indicates it was so understood by the negotiators of said agreement.

     *      *      *      *      *      *      *

On the record we are unable to see any merit in the contention of the plaintiff that the books in question are not "notebooks" under said Trade Agreement

with the United Kingdom, although they are undoubtedly also blank books within the broader meaning of that term.

We think the trial court arrived at the right conclusion when it overruled appellant's protest, and its judgment so doing is *affirmed*.

### DISSENTING OPINION

LENROOT, Judge: I respectfully dissent from the conclusion reached by the majority.

In my opinion the rule of *noscitur a sociis* is applicable to the construction of the language "except diaries, notebooks, and address books" as used in the commercial agreement with the United Kingdom. The majority opinion recognizes that the term "notebook" has a variety of meanings. It also recognizes that the rule of *noscitur a sociis* would be applicable if the merchandise involved consisted of promissory notebooks, and inferentially the majority opinion holds that under the application of that rule promissory notebooks would not be included in the provision "except diaries, notebooks, and address books."

I am fully in agreement with this view, but it is my opinion that the same reasoning which would exclude promissory notebooks from the provision should exclude stenographers' notebooks such as are here involved.

Such notebooks are as much within the common meaning of notebooks as are promissory notebooks, and when the term is considered in connection with the associated words "diaries" and "address books," it seems clear to me that the negotiators of the agreement had in mind only such books as were usually used for the purpose of making therein brief notes or memoranda. Ordinarily diaries are used for the purpose of briefly making notes of daily events and address books are used for noting the addresses of persons. Usually they are small in size. I think that the term "notebook" without qualification is understood to mean books used for the purpose of jotting down therein brief notes and memoranda, and that the term "notebooks" without the adjective "stenographers'" or "reporters'" would never be understood to include such books as here involved.

This view is strengthened by the evidence in the case. Copies of diaries, notebooks, and address books were introduced in evidence as typical of what is commonly understood by those terms.

Even the witness on behalf of the Government testified that books such as are here involved are bought and sold as "reporters' notebooks."

I venture to say that no purchaser making inquiry at a stationery store for notebooks without qualification would be shown blank books used by stenographic reporters, but would as a matter of course be shown a book of the general character of that introduced in evidence, which has printed thereon the word "Notebook."

Believing that the rule of *noscitur a sociis* is here applicable and that its application excludes the books here involved from the provision "except diaries, notebooks, and address books," it is my opinion that the judgment should be reversed and the cause remanded to the Customs Court with directions to sustain the protest. I am authorized to say that Judge Jackson joins me in this dissent.